UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE L. DEPUTY and
JAMES C. DEPUTY,

    Plaintiffs,

v.                            Case No.: 8:19-cv-1697-T-33JSS

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment (Doc. # 28), filed on March 16, 2020. Plaintiffs Diane and James Deputy filed a response in opposition on April 15, 2020 (Doc. # 32). Hartford filed a reply on April 29, 2020. (Doc. # 34). For the reasons explained below, the Motion is denied.

**I.   Background**

This case arises from an insurance dispute. Hartford issued policy number 55RBA976271 (the "Policy") to the Deputys, effective for the period of February 23, 2017 to

1

February 23, 2018.[1] (Doc. # 28-1 at 1; Doc. # 32 at 2). The Policy provided coverage for the Deputys' Brandon, Florida property (the "Property"). (Id.).

In early October 2017, Diane Deputy reported a water leak to Hartford. (Doc. # 28-2 at 5 (Dep. at 15)). Specifically, the Deputys noticed mold, mildew, dampness, and peeling wallpaper in their hall bathroom and discovered a water leak behind the vanity. (Id. at 5 (Dep. at 15-16)). The Deputys then reported the leak to Hartford. (Id. at 5 (Dep. at 15-17)).

On October 11, 2017, Andrew Giasson, a Hartford representative, contacted the Deputys by letter. (Id. at 42-43).[2] The Deputys then talked to Giasson via telephone, and Giasson advised them to contact a plumber of their choice to locate the leak and perform the repairs. (Id. at 6 (Dep. at 18); Doc. # 33-14 at 21).

In addition to Giasson, Hartford's claims adjuster, Joe Johnson, contacted the Deputys. (Doc. # 33-13 at 11-12). He asked the Deputys for a video of the damage, which they

---

[1] Hartford maintains that, at the Deputys' request, the Policy was cancelled effective February 20, 2018. (Doc. # 28-1 at 2, 92).

[2] These page numbers correspond to the pages of the exhibit in total, not Diane Deputy's deposition.

provided. (Id. at 14-15). Johnson reviewed the video and completed his estimate. (Id. at 17-18). Johnson's estimate, dated October 20, 2017, totaled $2,979.35. (Id. at 20).

The Deputys selected and hired plumber Jay Perkins. (Doc. # 28-2 at 6 (Dep. at 18)). Perkins took out the vanity and the walls in front of the leak, lifted out the toilet, replaced the copper pipe drain line, installed and painted new wallboards, installed a new vanity and tile, and reinstalled the toilet with new sealing and new grout. (Doc. # 28-2 at 51). The Deputys paid Perkins $1,092 for his work and also spent $793.92 on materials. (Id. at 7 (Dep. at 25)).

On October 20, 2017, after applying the Policy's $500 deductible, Hartford paid the Deputys $2,479.35 in satisfaction of the claim. (Doc. # 28-2 at 9 (Dep. at 31-32), 48-49; Doc. # 28-5). That same day, Giasson called the Deputys to discuss the repairs and ascertain whether they were in agreement with Johnson's estimate and whether access to the slab was needed. (Doc. # 33-14 at 21-22, 24-25). Giasson testified that the Deputys informed him that access to the slab was not necessary.[3] (Id. at 22).

---

[3] Johnson testified that there was "a suspected slab leak." (Doc. # 33-13 at 12).

3

On October 27, 2017, Giasson prepared a letter to the Deputys stating that "[o]ur investigation has determined that due to wear and tear on the water line in your bathroom[,] it leaked. As the policy excludes wear and tear and the system or appliance from which the water escaped[,] we are unable to provide coverage for the plumbing repairs. We are able to cover the ensuing water damages to your home." (Doc. # 28-4 at 28). Giasson testified that he did not rely on anything other than Johnson's estimate, photographs provided by either Johnson and/or the Deputys, and the Deputys' representations in preparing and approving the claim and coverage letter. (Doc. # 33-14 at 29-31, 36-37).

According to Diane Deputy, Hartford did not send any representative, plumber, or other individual to their house to discuss the claim or assess the damage in person. (Doc. # 28-2 at 15 (Dep. at 56-57)). Nor did Giasson ever directly contact or speak to Perkins. (Doc. # 33-14 at 24). Giasson confirmed that he prepared the coverage letter without relying on the opinion of a plumber retained by Hartford and without sending a Hartford representative to physically inspect the property. (Id. at 41-43).

In a customer-satisfaction survey completed soon after the repairs were finished, Diane Deputy gave Hartford a 10

out of 10 rating. (Doc. # 28-2 at 9 (Dep. at 30, 33)). She explained in her deposition that "we were satisfied in the immediate repair. We did not realize that it was indicative of major issues in our plumbing system and no one suggested or hinted or asked about checking anything. So we went from being satisfied with the cosmetic repair to realizing we had serious issues that should have been checked." (Id. at 9 (Dep. at 33)). Diane Deputy testified that, after the repairs covered by Hartford were completed, they began to notice other problems with drainage in the house, such as slow and stopped-up drains throughout the rest of the Property.[4] (Id. at 9-10, 13 (Dep. at 33-34, 46-49)).

Thereafter, Advance Pace Technologies (APT) was retained to perform a construction damage summary for the Property. (Doc. # 33-5 at ¶ 2). APT hired H2O Plumbing to conduct a video scan of the Deputys' plumbing system and locate the plumbing system at the Property, and this scan was performed on November 1, 2018. (Doc. # 28-16 at 32). On November 5, 2018, APT inspected the Property and prepared an estimate

---

[4] Specifically, Diane Deputy testified that the Deputys experienced slow drainage in the bathtub, shower, various sinks throughout the house, and the laundry. (Doc. # 28-2 at 13 (Dep. at 46, 49)).

5

that same day totaling $132,166.08 in order to remediate the damage to the Property. (Id. at 32-34).

On January 8, 2019, the Deputys received a construction proposal submitted by APT noting a "plumbing system failure," and again setting the estimated cost of remediation as $132,166.08.[5] (Doc. # 28-2 at 10 (Dep. at 35), 52-76). The proposal relied on an Xactimate[6] report prepared by APT and, according to APT's estimate, work needed to be done in nearly every room of the house, not just the hall bath. (Id. at 52-76; Doc. # 33-3 at 28-30).

On October 28, 2019, Mason Chickonski, the head contractor at APT, performed an inspection of the Property and took moisture level readings. (Doc. # 33-3 at 9, 41, 54). While at the Property, Chickonski noted elevated moisture readings. (Id. at 54-55). According to Chickonski's report, after his inspection and review of certain documents — including the Xactimate estimate prepared by APT, photographs taken by the Deputys, the videos taken by H2O Plumbing, and the reports prepared by Clean Cut Plumbing and Plumbing

---

[5] To date, none of the work has been performed. (Doc. # 28-2 at 39). Plaintiffs are seeking to recover $132,166.08 in this lawsuit. (Id.).

[6] Xactimate reports are construction cost summaries, or a computerized estimate for damages. (Doc. # 33-5 at ¶ 3).

Diagnostics Corp. — it was his opinion that the plumbing system at the Property had failed because of "wear and tear, deterioration and corrosion," that water and sewage was leaking into the home's foundation from the cast-iron plumbing system, that the water damage observed at the property in October 2017 was caused by this failed plumbing system, and that the only appropriate method of repair was to replace the entire system. (Doc. # 33-4 at 1-2).

On October 31, 2019, Reynaldo Alvarez with Plumbing Diagnostics Corp. went to the Deputy home to perform a hydrostatic test on the Property. (Doc. # 28-6 at 5, 30). Alvarez explained that this test shows whether the plumbing system has a leak underneath the slab. (Id. at 41, 43). According to Plumbing Diagnostics' report, the Deputy house failed the hydrostatic test, meaning that there was a leak in the slab. (Id. at 57, 61). In Alvarez's opinion, this testing failure meant that the entire plumbing system needed to be replaced. (Id. at 75).

Christopher Tesh, owner of Clean Cut Plumbing, Inc., went to inspect the Property on December 12, 2019. (Doc. # 28-8 at 4, 22, 51). According to Tesh's report, "[t]he original drain lines under this home appear to be past their

7

economic life span with bellies in the piping system."⁷ (Id. at 55; Doc. # 33-8 at 2). Tesh explained that the drainage system on the Property was "rusted and corroded out" which "[c]aused a lot of slow drainage and backups in the home." (Doc. # 28-8 at 56). He explained that the cast-iron plumbing system at the Property had substantial scaling, corrosion, and build-up throughout the system. (Id. at 34-35). Tesh stated that the system could not be "flushed" and then locally repaired because the pipes were in such poor condition that such a repair would "blow holes" in the pipes. (Id. at 59). There were, in fact, already holes in certain places. (Id. at 60).

As part of his inspection, Tesh found water damage at the Property, including in the cabinets, the P-trap areas, kitchen cabinets, and master bathroom (Id. at 86, 125). Tesh agreed that these areas of water damage were related to the plumbing system backing up, explaining that "the system is underwater, a good portion of the system, . . . [s]o the water has nowhere to go. . . . [S]olids and those start grabbing on

---

⁷ "Bellies" are low points in the drainage system, whether from a sunken pipe or some other problem, that can cause back-ups in the system. (Doc. # 28-8 at 65).

the side walls . . . those solids continue to come up and they back up." (Id. at 125-26).

In Tesh's opinion, the corrosion and build-up in the cast iron pipes is what caused the leak in the hall bathroom in October 2017. (Id. at 73-74; Doc. # 33-8 at 2). It was also Tesh's opinion that the only appropriate method of repair would be to tear out and replace the entire plumbing system. (Doc. # 33-8 at 2).

On July 12, 2019, Hartford removed the instant action to this Court. (Doc. # 1). Hartford has now moved for summary judgment, and the Motion is fully briefed and ripe for review. (Doc. ## 28, 32, 34).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference

10

from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. Analysis

Hartford's arguments are three-pronged. It first argues that under the plain and unambiguous terms of the Policy, it did not breach the agreement it had with the Deputys. (Doc. # 28 at 8-9). According to Hartford, the Policy covers only those "tear out" costs necessary to access the portions of the plumbing system that caused the loss. (Id. at 10). Because those costs "are precisely what Hartford paid to the [Deputys] for [their] reported Claim," and because "there is no evidence that other portions of the plumbing system caused the loss," Hartford contends that there has been no breach of contract. (Id. at 10-11).

Second, Hartford argues that the Deputys have failed to establish property damage during the Policy period. (Id. at 11). Hartford points out that the "first indication of any

11

issues with the cast-iron pipes at the Property came on or around November 1, 2018 [the date H2O Plumbing conducted a video scan of the plumbing system]; over a year after the [Deputys'] October 9, 2017 Claim and more than eight months after the [Deputys'] Policy was cancelled." (Id. at 12).

Finally, Hartford argues that there is no breach of contract because the Deputys cannot prove the essential element of damages. (Id. at 13). Hartford contends that the Deputys must prove that they suffered a direct physical loss during the Policy period in order to recover under the Policy and "the record evidence is devoid of any [] proof that an actual loss occurred with[in] the Policy period or that tear out and replacement is necessary beyond what the Hartford already paid for in [the Deputys'] Claim." (Id.).

For their part, the Deputys argue that Hartford's failure to provide tear-out coverage as provided for in the Policy for the October 2017 loss was the pertinent breach that triggered this lawsuit. (Doc. # 32 at 14). The Deputys claim that it is undisputed that they sustained a direct physical loss at their Property in October 2017 and the dispute centers around the cause of that loss. (Id. at 10). The Deputys urge that summary judgment should be denied because there are disputed issues of material fact as to the

12

cause of the damage to the Property and the extent to which the plumbing system needs to be repaired. (Id. at 17-19).

"Under Florida law, insurance contracts are construed according to their plain meaning." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). "[C]ourts must give effect to the plain language of contracts when that language is clear and unambiguous." Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1246 (11th Cir. 2002) (citing Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade Cty., 65 So. 2d 729, 731 (Fla. 1953)). "Whether a contract provision is ambiguous is a question for the court." Id.

Thus, the Court will turn to the pertinent provisions of the Policy. The Policy provides that:

> We insure against risk of direct physical loss to property described in Coverages A, B and C. We do not insure, however, for loss:
>
> **A.** Under Coverages **A, B** and **C:**
>    **1.** Excluded under Section **I** - Exclusions;
>    **2.** Caused by: . . .
>       **(e)** Any of the following:
>          **(1)** Wear and tear, marring, deterioration[.]

(Doc. # 28-1 at 38-39 (Policy p. 9-10)).

The Policy further provides that:

> **Exception To 2.e.**
> Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from an accidental discharge or overflow of water or steam from within a: . . .
>
> (ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises." This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises," but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises."
>
> We do not cover loss to the system or appliance from which this water or steam escaped.

(Id. at 39 (Policy p. 10)).

The Deputys have brought a breach of contract claim against Hartford. To prevail on a breach of contract claim, the Deputys must establish the following elements: (1) a valid contract; (2) a material breach; (3) causation; and (4) damages. Handi-Van, Inc. v. Broward Cty., 116 So. 3d 530, 541 (Fla. 4th DCA 2013). It is undisputed that the insurance policy here constituted a valid and enforceable contract between the Deputys and Hartford.

Further, the parties agree that the Policy at issue here is an all-risks policy. (Doc. # 28 at 10; Doc. # 32 at 10). "In all-risks, occurrence-based policies, an insured has the initial burden to show a loss to covered property during the

policy's term, with the burden then shifting to the insurer to show that the policy excludes the claimed loss." Floyd v. GeoVera Specialty Ins. Co., No. 3:18-cv-992-J-32JBT, 2020 WL 998690, at *3 (M.D. Fla. Mar. 2, 2020). Therefore, to trigger coverage, the Deputys merely needed to inform Hartford of the damage, which they did. See Id. At that point, the burden shifted to Hartford to either assert an exclusion or accept coverage. See Id. Hartford chose to accept coverage.

Both parties point to the recent Floyd case in their briefs. As Judge Corrigan explained in that opinion, "[t]his case comes down to (1) whether the Policy covers the cost to tear out and replace portions of an insured's home necessary to access and repair a deteriorated plumbing system that caused covered water damage to the property and, if so, (2) whether [the plaintiff's] toilet overflow resulted from a clogged toilet or a deteriorated plumbing system. The first is a question of law while the second is a question of fact." Floyd, 2020 WL 998690, at *2.

Turning to the first question, the Floyd Court analyzed a nearly identical insurance policy provision, and this Court agrees with the Floyd Court's distillation of the Policy's terms:

15

> Distilled to plain English: As an all-risks policy, the Policy covers all damage to [the Deputys'] home unless specifically excluded. Normally, the Policy does not cover damage caused by deterioration. However, under the "Exception To [2.e]" the Policy covers water damage that results from an overflow caused by a home's deteriorated plumbing system unless that damage is excluded elsewhere in the Policy. Once coverage is triggered for water damage under the "Exception To [2.e]," the Policy offers additional coverage for costs related to the deteriorated plumbing system. While the Policy does not cover the cost to repair or replace the deteriorated plumbing system itself, it does cover the cost to tear out and repair portions of the home necessary to access the deteriorated parts of the plumbing system that caused the loss.

Floyd, 2020 WL 998690, at *4.

"Thus, if a deteriorated plumbing system caused the covered water damage to [the Deputys'] home, then the Policy covers the 'tear out' costs . . ., but only those 'tear out' costs necessary to access **the portions of the plumbing system that caused the loss**." Floyd, 2020 WL 998690, at *4 (emphasis added). The parties here do not argue that the Policy is ambiguous, nor do they advocate for an interpretation of the Policy different from the one just presented by the Court.

But they hotly contest which portions of the plumbing system caused the loss and, thereby, which tear-out costs are "necessary" to access those portions of the system. According to the Deputys, the cause of the loss was the complete failure of the cast-iron plumbing system. But according to Hartford,

16

the cause of the loss was the deterioration of a copper supply line connected to the hall bath vanity. See (Doc. # 28 at 8, 10) ("The Hartford Policy's pertinent coverage and exclusionary provisions at issue are not ambiguous. . . . Here, Hartford does not dispute that Plaintiffs are entitled to those 'tear out' costs associated with the covered water Claim that are necessary to access the portion of the deteriorated copper pipe that caused the loss."); Doc. # 32 at 13, 16 ("Here, Plaintiffs had water damage as a result of the failed drain system. . . . There is no dispute that the Policy affords the Tear Out Coverage."). This causation issue is a question of fact. See Floyd, 2020 WL 998690, at *2 (explaining that the cause of the plaintiff's toilet overflow – a clogged toilet or a deteriorated plumbing system – is a question of fact).

Hartford argues that summary judgment in its favor is appropriate, however, because there is no genuine issue of material fact as to whether the Property had damage **during the Policy period**. (Doc. # 28 at 11-13). The Court disagrees. Recall that, under Florida law, an insured claiming under an all-risks policy has the burden of showing that the insured property had damage during the policy period. Mejia v. Citizens Prop. Ins. Corp., 161 So. 3d 576, 578 (Fla. 2nd DCA

17

2014). The Deputys have produced expert testimony and disclosures from Mason Chickonski and Christopher Tesh both stating that the October 2017 leak in the hall bath was caused by the deteriorated plumbing system. (Doc. # 33-4 at 2; Doc. # 33-8 at 2; Doc. # 33-3 at 44; Doc. # 28-8 at 73-74). And Diane Deputy testified that shortly after Perkins completed the repair (and while the Property was still covered by the Hartford's Policy), she noticed that the drains in her home were slow and not functioning properly. (Doc. # 28-2 at 13 (Dep. at 46-49)). In rebuttal, Hartford points to the fact that all of the Deputys' expert reports were generated more than a year after the October 2017 loss and more than eight months after the Policy was cancelled. (Doc. # 28 at 12). This may be so, but it does not change the fact that the Deputys have offered evidence that the water damage related to the October 2017 water leak was caused by a deteriorated plumbing system.

Thus, there is a disputed issue of material fact as to whether the Property had damage during the February 2017 to February 2018 Policy period that can be attributed to an overall failure of the cast iron plumbing system. Similarly, the parties' competing versions of what caused the water damage in October 2017 create disputed issues of material

fact as to whether Hartford breached the contract and whether and to what extent the Deputys incurred damages that were caused by the alleged breach. Thus, summary judgment is inappropriate. See Floyd, 2020 WL 998690, at *2 (denying insurer's motion for summary judgment where the parties disputed "(1) whether the toilet overflow was caused by a clog or by deteriorated pipes, (2) the extent to which the plumbing system needs to be repaired, and (3) whether [the insurer] paid the original water damage claim in full").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment (Doc. # 28) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of June, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE